Our next case is Project Veritas v. Cable News Network, Inc., 22-11270. I'll let counsel have a chance to get set up. Ms. Locke, when you are ready, and I see that you have reserved four minutes for rebuttal, you may proceed. May it please the Court, my name is Libby Locke on behalf of Plaintiff Appellant Project Veritas. This appeal arises under the District Court's misapplication of the Substantial Truth Doctrine under New York law. CNN anchor Anna Cabrera told a national television audience that Veritas published false information, misinformation, and was banned from Twitter as a result, when in fact, Twitter banned Veritas for a very different reason, because Veritas had published private, I'm sorry, published truthful but violated its privacy policy. Cabrera made this false claim even though she knew her statements were wrong, and she had tweeted just a few days earlier that Veritas had published supposedly private information. The District Court erroneously concluded that Cabrera's statement was substantially true as a matter of law, because based on its belief that the truth was more important than the damage to Veritas' reputation had she published the truth, it did not conclude that Cabrera's statement was factually accurate. But that analysis, which compared the magnitude of harm to Veritas' reputation between Cabrera's false statement and the truth, improperly used a comparative harm test as the dispositive inquiry for the Substantial Truth Doctrine. Can I ask you a question just to get your, so does it matter if this is a direct defamation claim or an indirect defamation claim? It seems like the District Court's opinion was kind of confused on that, and I wonder if you could just address how that should come out and whether that matters. Sure. On the implication claim, I don't think as a pragmatic matter here at the motion-to-dismiss stage it makes a difference. Perhaps in front of a jury, if you have to But I don't think the Court needs to get to the, to decide whether CNN intended the implication or not, because the defamation, it can affirm on the basis that it was a direct defamation claim. Here, it's, if you look at the three sentences that the District Court analyzed, the District Court did exactly what you're not supposed to do under defamation law, which is look at those three sentences in isolation. And instead, you're supposed to look at the, the, the totality and the entire context of the statement itself. And here, the, the, the District Court parsed out those three sentences. Sentence one, company, companies are cracking down to stop the For example, and then use this veritas as a subset, an example of a company that is spreading misinformation. So I don't think it's an implication claim. I think it's expressly defamatory. And that third sentence even goes further. It says that the suspension was part of a broader crackdown. So again, it's a, you have the whole pie and veritas was a subset of it. I think that's expressly defamatory. So I don't think you need, the Court needs to get into the implication and the, you know, whether Cabrera intended the statement. But I certainly think, given the whole context of the, the dialogue and the colloquy back and forth between Mr. Stelter, where, where, I mean, the context of that entire conversation was a conversation about QAnon and QAnon spreading conspiracy theories. I think it's pretty clear that the implication was intended here. So I think you could affirm on, on either of those bases. Okay. So the right way to do it, and it's, I don't mean to derail you by this discussion, but I mean, just to summarize so I understand, the right way in your review to do it would be, does the complaint state a claim for direct defamation? If yes, reverse. If no, then does the complaint state a claim for implied defamation? If yes, reverse. That's, that's your, that's what we would So I think the, the district court got it right that we had stated a claim for defamatory meaning. And you can, you can look at defamatory meaning as to whether it's expressed or whether it's implied. Well, I guess my, my problem is, it seems like the district court sort of just skipped to implied defamation and just sort of said, I'm reading the complaint and I'm reading it to state an implied defamation claim. And I guess my thinking would be, it seems like the first step would just be, does the complaint state a claim for direct defamation? Do we have to, I guess my point, do we have to choose in looking at the complaint, like choose a route to go down, or should we just? The only difference it would make would be when the case goes to trial in front of the jury. The jury would need to answer the question, have an additional question to answer, was this intended? And that's an objective test and, and it's a, it's a, whether they, from the context of the statements. So I think that's really the only difference here. I, I don't think Veritas would have any trouble satisfying that in front of a jury, given the context here. So, I mean, I don't mean to, I don't mean to avoid Your Honor's question. I, I think you can affirm on the expressed defamation claim itself. On the substantial truth inquiry, if I've, if I've addressed your, if I've addressed your question. Yes, sure. That's fine. Thank you. And you meant reverse, right? Yes. On the substantial truth inquiry, at its simplest formulation, the substantial truth doctrine asks whether the substance of the alleged misconduct is the same or different from the truth as pled in the complaint. Ms. Locke, let me, let me stop you. Having read through the defamation cases that the parties have been debating, this is my formulation for sort of on the, on the one hand and then on the other, and if you could correct me if I'm wrong. On the one hand, I think you have the Bustos case and then Judge Gorsuch saying it's substantially true to say you are a member of the Aryan Brotherhood prison gang when you merely conspired with the Aryan Brothers prison gang. That's close enough. On the other hand, you have the example that then Judge Scalia gave in the Liberty Lobby case talking about, well, Benedict Arnold may be a traitor, but he's not a shoplifter, and so you can't make that charge. That's how I've sort of been at camps of the way the cases fall out. Correct me if I'm wrong, but if my formulation is correct, then could you sort of address, obviously, you're going to be arguing that this is more of a Liberty Lobby, Benedict Arnold situation than the Bustos case, correct? Your Honor, I actually think if the Court, I actually think that Bustos, Bustos and Liberty Lobby can be harmonized, and there are harmonizing principles insofar as if the Court is looking for a way to state precisely what a test should look like, because good judges, no doubt, good judges get this inquiry wrong, and it can be confusing. But the two-step test would be, is the substantive harm that is alleged, the libel, the same or different, substantively on the accuracy of the facts? The substantial truth doctrine looks to, first and foremost, whether the statement is true or false on its own terms, and you see that language in Bustos that then-Judge Gorsuch used. It's not, and then the second, if the answer to that is yes, they are substantively different. This is Liberty Lobby, a thief versus a murderer. Then that ends the inquiry. It's not substantially true. You also see that language and similar analytical concept coming from the very decision that the Court asked us to address yesterday in Crane versus New York World Telegram, where the highest court of New York says a plea of truth as justification, as a defense, basically as a matter of law, must be as broad as the alleged libel and must establish the truth of the precise charge therein made. The second step — so if the answer to the question is the charge is different, then it's not substantially true, and you don't need to ask a second question. The second question, and this is where I think then-Judge Gorsuch used the language of harm. You can look to harm, but it's not the dispositive inquiry. If the substantive conduct is effectively the same, like it was in Bustos with the membership versus being an affiliate, like a formal member versus an affiliate, if the conduct is the same, well, is there a separate greater harm by the alleged misconduct? And that is where, on the facts of that case, there was some analysis. Well, membership requires having committed a murder, and that perhaps could be an additional harm. But on the facts of that case, the judge said, oh, well, we understand that you did, in fact, commit a harm. So the harm question, it's not that it's irrelevant. It's just not dispositive. And I think of it as a, is it sufficient to show that something is not substantially true? Yes, it's a sufficiency test, but it's not a necessary test. And the restatement of torts makes that very, very clear. It says it's the truth or falsity of the particular charge that is to be determined. It's not enough that the accused person is found to have engaged in some other substantively different kind of misconduct, even though it is equally or more reprehensible. And so really the first inquiry is, is the substance of the falsehood, is the act of misconduct substantively the same or not? And in Bustos, it was. And so I do think if I've, hopefully I've answered your question, that I think you can harmonize all of these cases that both parties are relying on by looking at, first, is the act alleged substantively the same? And if it is, then you can look to harm. Let me ask you a question before, I know your time is up, but my question is about malice. Assume, for the sake of argument, that we were to agree with you on the substantial truth issue you've just discussed. We have, the district court did not reach the issue of malice. I assume you would say we could decide the issue of malice on the record. We don't have to send that back to the district court. I don't think so. It's a de novo review here. It's fully briefed. It's fully developed. I think as a matter of judicial efficiency, it would be appropriate to decide it here. Imagine if you go back down and we might be right back up here again on very similar briefing. Okay. All right. Thank you. You have reserved four minutes for rebuttal. And you may proceed, Mr. Schroeder, when you are ready. Thank you. May it please the Court. I am Eric Schroeder. I am representing C&N in this action. We are asking for affirmance of Judge Jones' decision dismissing the complaint. First, would you like me to start somewhere? You both had some questions. There was a case circulated yesterday. It's up to you. Well, I mean, honestly, I mean, I think you should go to the heart of the issue, which to me is, is this a substantially true statement given that it, well, given that it's at least wrong in part? So what do you say about that? Sure. So what we're dealing with here is a commentary that was addressing a major public issue at the time, which is how does social media, how does social media control bad actors, control content that violates their own community standards? And we also have Project Veritas, which is a public figure. That's undisputed on the record. So we have a public issue, public figure, public issue. I'll get to why that's important later. Then we have what the tweet first started with. I'm sorry, Twitter's announcement first, which was they suspended Project Veritas for, and I quote, repeated violations of Twitter's policies prohibiting the sharing or threats of sharing of other people's private information without consent. And as you saw in Judge Jones' decision, he went down to that policy because that policy is mentioned within the complaint. And so it's referred to in the complaint. You can take a look at it. And part of that was you may not publish or post other people's private information without their express authorization and permission. We also prohibit threatening to expose private information or incentivizing others to do so. And the reason that they prohibit that, and this is why this is important, is sharing someone's private information online without their permission, sometimes called doxing, is a breach of their privacy and Twitter rules. Sharing private information can pose serious safety and security risks for those affected and can lead to physical, emotional, and financial hardship. I'll get to why that's important later, but I wanted to set the stage right there because then we went to Ms. Cabrera's and Mr. Stelter's commentary on that February day. And let's see what she said. And by the way, I don't believe that Judge Jones parsed the words, and I agree with my colleague that you don't parse the words in defamation cases. That's decades old. We take everything in context. But let's take everything in context. So, Ms. Cabrera stated, we're starting to see companies cracking down to try to stop the spread of misinformation and to hold some people who are spreading it accountable, Brian. For example, Twitter suspended the account of Project Veritas, a conservative activist organization. At least that's how they couch themselves, but this is part of a much broader crackdown, as we mentioned, by social media actors cracking down on accounts and promoting misinformation. So, that's her statement. Let me get to the gist of that. Her statement is, there is a broader theme here. Social media is cracking down on sources of misinformation. Project Veritas is an example of that, and then she returns, but this is part of a much broader. The example there is that Project Veritas is a source of misinformation. She's, you know, and that's in their, they don't challenge that as defamatory in their complaint. That is where the, for example, refers to in the context of this. Then we go to Mr. Stelter. In the complaint, they mention part of it. It says, oh yes, Project Veritas, a very controversial conservative group, got swept up in a Twitter policy by violating multiple rules on the site. That was in the complaint. What he said in full, and this is in the exhibit, these companies' policies are changing as time goes on, becoming more strict as time goes on, and as a result, groups like Project Veritas, no connection to QAnon, but Project Veritas, a very controversial group, got swept up in a Twitter policy by violating multiple rules. So, the gist here of that story was that there's a broader phenomenon going on. Social media like Twitter are cracking down on sources of misinformation. An example of a source of misinformation that was subject to a crackdown was Project Veritas. And then Mr. Stelter comes in and provides more context. They're cracking down by enforcing multiple different rules. They never mention which rule Project Veritas was suspended for. That's the, and we both know what rule it was now, it was the privacy, it was the prohibition of sharing private information. So, why is that important? There is no direct information. That's not, excuse me, Counselor, that's not a source of misinformation. Doxing is, if anything, a source of accurate information that you shouldn't publicize. I'm not disputing you with that, Your Honor. Well, I misunderstood what you said then. I thought you said that an example of the misinformation was what they were suspended for. Nope. CNN was not referring to the policy violation was misinformation. They were referring to Project Veritas as a source of misinformation. That was the gist of the story. So, just so I understand, you're saying that the way to read these statements is that CNN was alleging that Project Veritas was a source of misinformation and that Twitter had used its rules to suspend them. But that's what you're saying? Okay. Yes. And, in fact, you see . . . Defamatory. Excuse me? Why wouldn't that be defamatory? They were using their rules to suspend . . . No, that you just, that CNN alleges that Project Veritas is a source of misinformation. Would that be defamatory? It would be a different case that's before this Honor, before Your Honors. That's the way you read the statement. It's a defamation case. I'm just trying to figure out, it just seems like you read it in a different defamatory way. That, well, maybe I'm misunderstanding your comment. Are you, were you just stating that you do not believe by CNN directly stating Project Veritas is a source of misinformation is not defamatory? Asking, but I mean, so, I mean, the way you read these statements is that, I mean, just correct me if I'm wrong, the way you read these statements is that CNN is stating that Project Veritas spreads misinformation on Twitter, you know, and maybe that's unrelated to the specific rule in which they were taken off Twitter. I guess my question is, if that's the way you read the statement, isn't it just another kind of defamation? That would be a different claim, but we have a very singular, narrow, thin defamation claim here. The thin defamation claim is that this statement overall directly or implied that Project Veritas was banned due to spreading, for violating the Twitter authenticity policy. They don't have a misinformation policy, they have an authenticity policy. Instead of telling the truth, which was they were banned for violating the policy on sharing private information that could endanger others. So it's a very thick defamation claim when you look at the complaint. I think your reading of the February 15 on-air comments is completely contrary to the plain meaning of the words. We're starting to see companies cracking down to try to stop the spread of misinformation, not to try to stop doxing. And to hold some people who are spreading it, the antecedent for it is clear, accountable. Brian, for example, for example, example of holding people who are spreading misinformation accountable and cracking down to stop the spread of misinformation, Twitter has suspended the account of Project Veritas. Now, you don't persuade at least me by saying those words mean something other than the plain meaning. There is the average listener, in fact, even the below average listener would gather from that, that Project Veritas had been cracked down on for spreading misinformation. It's clear. Question mark. Excuse me. I respectfully disagree. But we have not challenged the court's ruling that that plausibly was alleged, that that was plausibly implied. Excuse me. That that was plausibly implied. So I'm. I understood your argument just preceding my question to be challenging exactly that. It's part of the argument because the gist, because what the gist or the sting, the reputational sting of this, we believe, was that they were identified as a source of information that Twitter took action against. And so what what Judge Jones decided and what you're going to and part of what you decide in this court underneath substantial truth and material falsity is what is the meaning of that falsity? Was that falsity substantial? Was it material? And so I can. How can you say, how can you say accusing a news organization or a publisher or whatever we call in the modern age Project Veritas? How can you say that accusing them of spreading misinformation is not harmful? I have not said that. And if I did. What are you saying? If it if it were stipulated false to exam last question on the test, you pass or fail the course based on a candid answer to it. And if it's stipulated that that's false. You're willing to stake your position on the fact that it's no more harmful to Project Veritas than if you told the truth and said they were suspended for being for doxing. In the context of this of the commentary as a whole. Yes, Your Honor. I just never thought I'd see a news organization arguing that lying to your subscribers or viewers is not any worse than revealing somebody's house number. Being accused of misinformation is laudatory. We're not accusing that it's non defamatory. What we're saying is in the context of this commentary, when you view what the truth is and you substitute the truth for the falsity. And we're going into the Guccione line of cases on the New York here on the Substantive Truth Test. And you and you were to put into that commentary and clarify that Project Veritas had been suspended for a different for a different content policy. They were still banned for violating a Twitter content moderation policy. It was a different one. If you put that into that commentary, the reputational sting would still be there when you read the whole commentary as a whole, which was that they were cracking down on sources of information. They took action against Project Veritas under a different rule. But this is all part. Let me put it this way, too, in more blunt terms. And I assume you can speak for your client, at least in the context of this argument. I know you can. If your client had to choose between being branded as someone who revealed high profile people's house numbers or being branded as an organization that spread lies, which would it choose? And I know it's a hypothetical question and they're not guilty of either. But you tell me, which one would it choose? They would want neither. So that's not an answer. That's not an answer. You put the comparative harms test. I just walked by the judge. I shouldn't go into that. Your Honor, endangering people is not, I think it's a very difficult question to answer because endangering people versus misinformation, I shouldn't have to choose between the two. But CNN is a news organization and they pride themselves. You have to choose between the two if you're making one of your arguments comparative harms. I will choose. We do not want to be called sources of misinformation. But I will go back and I've answered your question and I'm going to explain a little bit more. If we look at Justice Gorsuch's opinion on explaining material falsity, it's not that they are equivalent. You're going to look to see if the truth causes significantly more, if the truth was, did the falsity cause significantly more reputational damage than if the truth was said? And that's when the Boosta is talking about material falsity. And I would, it is our position that the, excuse me, the violation of the policy prohibiting sharing of information to ensure people's safety, if that was told as the truth, the difference here is modest. You've asked me to commit. I did commit. But I also believe the difference is modest. I appreciate that. And usually it takes more of a struggle to get somebody to accept a hypothetical question. And I appreciate you answering it. But see, that's where I think one of the weakest points of your case is. I, forgive me, Googled, does truth matter to CNN? And I got this fascinating video dated June 8, 2017, a video story piece, whatever, in which CNN presented to the world, their journalists to talk about why the truth matters so much to a news organization. And there's Don Lemon saying, why does the truth matter? The truth matters because just like that old saying, the truth will set you free. We'll forgive him for confusing old sayings with the New Testament. Brooke Baldwin said, the truth matters because we need the facts. We're here to report the truth. Michelle Appiera says, why does the truth matter? I mean, that's almost like saying, why is the sky blue? And what is meaning of life? It just does! Exclamation in her voice. And Kate Baldwin, without it, what are we left with? Sandra Gupta, my favorite. Everything hinges on the truth. Now, I look to see, why does avoiding doxing matter to CNN? And I didn't come up with anything that was usable in this context. It seems to me like the weakness in your case is you're talking about journalists in a news organization and you're talking about the truth. I think that trumps all other comparative harm models in our discussion. Now, I just put that out there to give you a shot at it. Thank you, Roderick. And really, I really do appreciate you telling me what you're thinking right now. And if the reason that, in one, I totally agree with you on the truth, and CNN agrees with you on the truth. Let's look at it on the other side of the aisle, though. Exposing somebody's private information and exposing them to danger. I didn't want to go there before, but it's in my head, so I apologize for this. But I was just in front of the Judge Robert Vance exhibit. I've been a part of the Vance forum for many years. He received a bomb. Exposing that sort of information to people, endangering them, it is a real risk. It is a real problem for Twitter, and that is why they took action. And I'm not getting outside the four corners to complain. I'm just going by what they said. Repeated violations of sharing or threatening to share private information. Now, when we go back to Justice Gorsuch, when we go back to material falsity cases, and I do want to talk about material falsity, because I think they totally did not talk about it. I'm sorry. I'm over. You are over. You have answered his question. I'm not going to let you shift topics, though. So, thank you. Thank you, Your Honor. Ms. Locke, you have four minutes in rebuttal. Thank you, Your Honor. Judge Carnes, I think I can answer your question about which would CNN choose, the truth versus sharing private information, and which causes more harm. Again, I don't think that is the proper test. But to answer your question, you need to look no further than the record in this case. The Wilson case, case in California that we cited in our brief, CNN presented evidence, and the court found that its ability, and I'm quoting from the court, its ability to participate meaningfully in public discourse on matters of public interest depends on its integrity and credibility. And that's a 2019 case. And you compare that, Your Honor, with page 9 of the complaint in this case at A15 in the record, I just dispute the characterization that this is doxing. We have in the complaint a photograph of where CNN published a story with a house number on it. It revealed ostensibly private information, a house number. But just to make the record clear, what we pleaded in the complaint is that a house number was revealed that was devoid from identifying even the city, the state, the street name of this home, or in fact, that the home belonged to the individual to whom that Veritas was attempting to interview. I thought Mr. Schroeder's argument was that Twitter's policy itself would see fairly enough since it was referred to, brought in in the response to the motion to dismiss. I'm sorry, in his motion to dismiss. I'm sorry, in response to your motion to dismiss. Forget that. You know what I'm talking about. Somewhere in the record he brought in, and I hadn't seen your objection to it, that Twitter's policy was to only suspend for repeated violations. Now, I know the difference between paragraph 2 and 27 and 28 of your complaint. You alleged that the repeated violations remark, you attribute that to Ms. Cabrera. But at the same time, he's saying, by saying that Twitter suspended you, oh, they're talking about repeated violations. Your Honor, I think you have the record correct. It was Ms. Cabrera who alleged that it was repeated violations, or she's repeating what she says she heard from Veritas. But the policy itself is much broader. It's not a, CNN has characterized it as a doxing policy. They refer to it in their briefing as a doxing policy. It's a privacy policy. It's much broader than that. And there can be other instances of supposedly private information. But we just don't concede, as a matter of the pleading, that there have been repeated violations of this policy. That is what Ms. Cabrera said. And at this stage, you have to take the facts and the light, most favorable to the plaintiff here. But you also don't contend we can't consider the Twitter policy that was, I think it was attached to their motion to dismiss, because it's referred to in the complaint. No. That's part, it's before us, is it not? Yes, sir. It is before the court. And we do not challenge that the court can consider the policy as written. Thank you, Ms. Locke. Thank you. Thank you all. And court is now in recess until tomorrow morning. Thank you.